# Peters v. Whalen.

*Evidence—Nonadmissibility of an unsigned agreement of suretyship.*

An unsigned paper purporting to be a contract of suretyship was properly rejected when offered by plaintiff as evidence, when not only was there a total failure to lay the ground for the admission of such unsigned paper by reason of fraud, accident or mistake, but where the testimony of the officer of the trust company, defendant, clearly shows that it never was intended that the trust company should become surety by executing said agreement.

Argued Oct. 8, 1900. Appeal, No. 68, Oct. T., 1900, by defendant, in suit of James Peters & Son, to use of the Industrial Trust, Title and Savings Company, against Ellen M. Whalen, owner, etc., Appellant, who was sued with Archibald Neill, Contractor, from judgment of C. P. No. 3, Phila. Co., Dec. T., 1893, No. 48, M. L. D., on verdict for plaintiff. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed. Opinion by BEAVER, J.

Sci. fa. sur judgment. Before McMICHAEL, J.

It appears from the record and evidence that Ellen M. Whalen borrowed from a building association the sum of $2,400 to be used in the erection of a building. The Industrial Trust, Title and Savings Company issued the policy in the name of the building association, guaranteeing the completion of the building and protecting against any mechanics' liens, taking at the same time a bond from Archibald Neill, the contractor. At the time the policy was ordered an agreement signed by Mr. and Mrs. Whalen and by Archibald Neill in the office of the contractor was left there by Charles Knittel, Esq., attorney for the building association and, as alleged, also for Mrs. Whalen. This agreement was held by the trust company from the date of its execution until its production at the trial of the case some six years afterwards.

Other facts appear in the opinion of the court.

At the trial plaintiff offered in evidence the agreement above referred to, which was rejected in evidence under objection of defendant:

" This Article of Agreement made and entered in this day of March, 1893, by and between John Whalen and Mary, his wife, of Harrowgate, 25th Ward, Phila., as party of first part, and Archibald Neill, of 179 Berks Street, Phila., as principal, and ' The Industrial Trust, Title and Savings Company,' of Philadelphia as security as party of the second part.

" Witnesseth, That the party of the second part agrees and hereby binds himself to furnish all the materials and labor (including tools, scaffolding, etc.) necessary to execute and finish complete the erection and completion of a Dwelling House to be erected for the party of the first part at Kensington Avenue below Tioga Street east side, according to the drawings and specifications prepared therefor by Archibald Neill and which are signed and made part of this agreement, for and in consideration of the sum of $2,450, said amount to be paid as hereinafter provided.

" The party of the second part also agrees that the work shall be commenced on or before the 1st day of April provided he can have access to the premises at that date, that it shall be in strict conformity to the drawings and specifications, that he will not in any way hinder or delay the other contractors in the performance of their contracts, and that the whole job shall be pushed on to completion as rapidly as practicable, consistent with its own durability and safety, and shall be finished complete in every particular on or before the 1st day of July, 1893.

" In consideration of the prompt and faithful performance of the foregoing terms and agreements, the said party of the first part agrees and hereby binds themselves to pay the said party of the second part the aforesaid sum of $2,450 in the following manner, viz : The full amount to be placed in the care of the Industrial Trust, Title and Savings Company of Philadelphia to which all bills shall be presented and by them paid on the indorsement of the contractor, and signing of a release of liens. The said Trust Company shall pay to the party of the first part a sum covering the amount of the pay list of those employed by him at the end of each week as the work progresses, and the balance at the completion of the contract. The said party of the first part further agrees to pay the aforesaid Trust Company a sum equal to $1\frac{1}{2}$ % of the contract price for their services.

" In Witness Whereof, we have affixed our signatures and seals this     day of     189.

" Witness:                              JOHN J. WHALEN,

   "as to Neill:                        ELLEN MARY WHALEN,

      " LOUIS BOSS.                      ARCHIBALD NEILL."

The court below directed a verdict for plaintiff.

Verdict and judgment for plaintiff for $45.88. Defendant appealed.

*Errors assigned* were (1) in sustaining plaintiff's objection to the admission in evidence of the agreement offered by defendant, reciting said agreement. (2) In giving binding instructions for plaintiff.

*D. J. Callaghan,* with him *William A. Dever,* for appellant.— The trust company cannot have the benefit of the money deposited with it by the defendant, and at the same time repudiate the contract on which it was obtained : Jones v. Building Association, 94 Pa. 215; Mundorff v. Wickersham, 63 Pa. 87.

In Sandilands v. Marsh, 2 B. & Ald. 673, a firm was held bound by a guaranty given by one of the partners when there was evidence of adoption and ratification by the firm of the contract.   To the same effect are Kidder v. Page, 48 N. H. 380, Cockroft v. Claflin, 64 Barb. (N. Y.) 464, Ex parte Gardom, 15 Ves. 286, and 24 Am. & Eng. Ency. of Law, 727.

The use plaintiff was a party to that contract: Freeman v. R. R. Co., 173 Pa. 274 ; Blymire v. Boistle, 6 Watts, 182.

If the use plaintiff were not surety for Neill nor a party to that agreement, it was the agent for Neill.

The trust company was trustee for Mrs. Whalen for the faithful application of the money deposited with it by her.

The rule under discussion applies not only to persons standing in a direct fiduciary relation toward others, such as trustees, executors, attorneys and agents, but also to those who occupy any position out of which a similar duty ought in equity and good morals to arise : Christy v. Sill, 95 Pa. 380 ; Harrold v. Lane, 53 Pa. 268.

*E. Hunn Hanson,* with him *P. F. Rothermel, Jr.,* for appellee.

OPINION BY BEAVER, J., November 19, 1900:

The appellant's first specification of error relates to the rejection of a written agreement which purports in its text to be " between John Whalen and Mary, his wife, of Harrowgate, twenty-fifth ward, Philadelphia, as party of first part, and Archibald Neill, of 179 Berks street, Philadelphia, as principal, and the Industrial Trust, Title & Savings Company, of Philadelphia, as security, as party of the second part." There is no definite date to this agreement nor was it signed or sealed by the Industrial Trust, Title & Savings Company. It was twice offered as evidence, twice objected to and the objection both times sustained. Which of these rulings of the court below is assigned for error does not distinctly appear in the appellant's first specification of error.

This assignment might be properly disregarded as in violation of our Rule 17 which requires that " when the error assigned is to the admission or rejection of evidence, the assignments must quote the full substance of the bill of exceptions or copy the bill in immediate connection with the assignment." Assuming, however, that the assignment relates to the last offer which was made at the close of the defendants' testimony, and overlooking the grave defect in the assignment itself, we can see no error in the ruling of the court below. Not only is there a total failure to lay the ground for the admission of the unsigned paper by reason of fraud, accident or mistake, but the testimony of the officer of the trust company clearly shows that it was never intended that the trust company should become the surety of Neill, the contractor, to the appellant. The contract of suretyship on the part of the trust company was to a building association from which money had been borrowed by the appellant for the purpose of erecting her house, and in pursuance of that contract, a title policy was issued to the building and loan association by the trust company. The officer of the trust company testified that it was never contemplated in any way that the paper offered in evidence was to be signed or sealed by his company, and that it never had " any contract of any sort, kind or description " with the appellant.

The appellant was called as a witness. She states in her testimony that she had heard the testimony of the representa-

tive of the trust company and does not in any way deny or controvert it. She does not allege any agreement on the part of the trust company to sign the paper offered in evidence or any undertaking on its part, verbal or otherwise, to become the surety of Neill, the contractor, to her. The attorney of the building association was called as a witness, who says: " I represented both parties. I first represented the building association, and through the building association came in contact with Mrs. Whalen." His testimony is very vague and indefinite. It may be summed up in his answer to the question, " Why was this agreement left with the trust company?" which was: " I left everything with the trust company—money and agreement—and was to get a title policy for the building association and the agreement afterwards. It was morning and I was anxious to get down town, and I left the whole thing with them. I got the title policy afterwards and the agreement I left there. They were to sign it. It was left there with them to sign it. They were to be security for Neill and it was left there. I left the money there. I paid $2,400 I had from the building association, and $50.00 Mrs. Whalen took out of her pocket and paid, and I think she also paid at that time the $36.00 that the company got for its services in securing against liens for the completion of the building." There is no explanation of any kind as to his failure to secure the agreement at the time the title policy was delivered. It is difficult to account for this failure, if the signing of the agreement was part of the contract of suretyship. The evidence, taken as a whole, falls far short of the rule which requires it to be clear, precise and indubitable in order to reform a written agreement on the ground of fraud, accident or mistake. The testimony offered being properly rejected, it followed as a matter of course that the verdict should be for the plaintiff upon the mechanic's lien, as to the regularity of which there was no question, and as the direction of the court to find for the plaintiff constitutes the only other assignment of error, the judgment is affirmed.